UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROBERT MARTIN DALEY,

           Petitioner,

    v.

TONYA ANDREWS,

           Respondent.

Case No. 1:25-cv-00922-KES-CDB (HC)

FINDINGS AND RECOMMENDATIONS TO DENY PETITIONER'S AMENDED PETITION FOR WRIT OF HABEAS CORPUS

(Doc. 8)

**14-DAY OBJECTION PERIOD**

Petitioner Robert Martin Daley ("Petitioner"), a federal detainee proceeding by counsel, filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth below, the undersigned recommends that the district court deny Petitioner's Amended Petition for Writ of Habeas Corpus.

I.    **BACKGROUND**

Petitioner was born in Manchester, Jamaica and is a Jamaican citizen (Doc. 8 at ¶14; Doc. 12-2 at 56). He first came to the United States in 1982 at the age of 13 years old and was accorded lawful permanent resident status. (Doc. 8 at ¶15). Petitioner applied for naturalization but withdrew his application at the interview. (Doc. 12-2 at 2). On March 24, 1993, Petitioner was convicted of the felony offense of Possession with Intent to Manufacture/Sell/Deliver Marijuana and sentenced by the Cumberland County Superior Court in North Carolina to two years' incarceration per count, suspended. (Doc. 12-1 at ¶8; Doc. 12-2 at 15, 56). The same day,

1

Petitioner was convicted of the felony offenses of Conspiracy to Traffic in Cocaine by Transportation of at least 28 Grams and Trafficking by Possession of at least 28 Grams but Less Than 200 Grams of Cocaine and sentenced by the Cumberland County Superior Court to seven years' incarceration, suspended, for each offense. (Doc. 12-2 at 14-15, 56). Petitioner was granted an early discharge from his probation supervision term on October 12, 1995.  (*Id.*).

On August 2, 2002, Petitioner pleaded guilty and was convicted in the United States District Court, District of Maryland, for Conspiracy to Distribute and Possess with Intent to Distribute 5 Kilograms or More of Cocaine in violation of 21 U.S.C. § 846 and sentenced to 57 months' incarceration and three years of supervised release. (*Id.* at 15; *see* Doc. 13-4 at 2-17). Petitioner was released from the custody of the Federal Bureau of Prisons ("BOP"), placed on supervised release, and transferred to the custody of Immigration and Customs Enforcement ("ICE") on September 22, 2005. (Doc. 12-2 at 15-16). Petitioner was then deported to Jamaica on December 22, 2005. (*Id.*).

Petitioner's supervision term was initially set to expire on December 21, 2008; however, he was arrested on November 30, 2007, in Cook County, Illinois on charges related to identity theft and illegal re-entry into the United States. (*Id.* at 16). The government filed a petition on July 10, 2008, alleging Petitioner violated his terms of supervised release. (*Id.*). Separately, Petitioner failed to appear in the Cook County Circuit Court for the identity-theft charge, and a bench warrant was issued for absconding. (*Id.*).

On October 29, 2009, the U.S. Marshals Service located Petitioner in Howard County, Maryland, in possession of fraudulent identification documents consisting of a New Jersey driver's license, a Social Security card, and a New Jersey voter registration card in the name of another person. (*Id.* at 17). He was charged for Illegal Reentry of a Removed Alien and immediately placed in BOP custody. (*Id.* at 16, 29-31). On March 19, 2010, the District of Maryland sentenced Petitioner to 36 months in BOP custody to run consecutively with Petitioner's four-month sentence for the supervised release violation. (*Id.* at 16-17, 33-42). Petitioner was released from BOP custody on September 21, 2012, and transferred to ICE custody, where he was deported to Jamaica on November 1, 2012. (*Id.* at 17).

On June 28, 2016, Petitioner was arrested for illegal reentry and convicted by the United States District Court, Eastern District of New York, for Illegal Reentry in violation of 8 U.S.C. §§ 1326(a), (b)(2). (*Id.* at 55). The district court sentenced him to 46 months incarceration. (*Id.*). Following Petitioner's service of sentence, ICE took him into custody, and he was removed from the United States on October 31, 2019. (*Id.* at 65).

Petitioner's most recent entry to the United States occurred on October 17, 2022. (Doc. 8 at ¶19; Doc. 12-2 at 64-65). Petitioner was attempting to enter the United States from Mexico at the San Ysidro, California Port of Entry, when he was arrested for illegal reentry. (Doc. 12-2 at 64-65). The United States District Court, Southern District of California, held a detention hearing on October 18, 2022, and found that Petitioner had a history of supervised release violations, a prior criminal history and/or immigration history, and had no known or minimal contacts in the Southern District of California. (*Id.* at 59).  The district court concluded that there was a serious risk that Petitioner would flee and that no condition or combination of conditions would reasonably assure his appearance in court. (*Id.*). As such, Petitioner was detained pending resolution of his illegal reentry charges. (*Id.*). Ultimately, Petitioner pleaded guilty to Attempted Reentry of Removed Alien under 8 U.S.C. § 1326, admitted that he used a passport belonging to another individual, and was sentenced to 24 months in BOP custody. (*Id.* at 65, 78-79).

After completing his sentence for illegal reentry on June 28, 2024, Petitioner was taken into custody by Department of Homeland Security ("DHS"), where was detained under 8 U.S.C. § 1226(c) pending removal proceedings at the Golden State Annex Detention Facility and later transferred to California City Detention Center in California City, California. (Doc. 8 at ¶¶ 1, 20; Doc. 13-2 at ¶2; *see* Doc. 12-2 at 84, 90). On July 2, 2024, Petitioner claimed he was at risk of continued retaliation by individuals in Jamaica after he was arrested in 2002 and cooperated with U.S. law enforcement. (Doc. 8 at ¶20; Doc. 12-1 at ¶23). On August 2, 2024, DHS filed a Notice to Appear charging Petitioner as subject to removal from the United States pursuant to section 212(a)(7)(A)(i)(I) of the Immigration and Naturalization Act. (Doc. 12-2 at 96). The same day, DHS determined that Petitioner had established a credible fear of returning to Jamaica. (Doc. 12-1 at 6). Petitioner "has been seeking Asylum, Withholding of Removal, and Relief under the

Convention Against Torture" since he has been in detention. (Doc. 8 at ¶20).

After two requests for a continuance to secure counsel, Petitioner requested a bond redetermination on October 3, 2024, pursuant to 8 C.F.R. § 1236. (Doc. 12-1 at ¶26; Doc. 12-2 at 100-01). The Executive Office for Immigration Review ("EOIR") granted Petitioner's request, but on October 17, 2024, Petitioner withdrew his request for a bond hearing without prejudice and waived appeal of the order cancelling the hearing. (Doc. 12-1 at ¶26; Doc. 12-2 at 100-01). Petitioner requested another bond redetermination, which EOIR granted on March 14, 2025. (Doc. 12-1 at ¶29). On March 20, 2025, before the hearing date, Petitioner again withdrew his bond request without prejudice and waived appeal of the order cancelling the hearing. (Doc. 12-2 at 103-04).

On April 21, 2025, the immigration judge (at times "IJ") granted Petitioner's request for a continuance of proceedings and rescheduled his individual hearing to June 3, 2025. (Doc. 12-1 at ¶32; Doc. 12-2 at 106). On June 3, 2025, the immigration judge granted Petitioner's request for a continuance so Petitioner could obtain and file more supporting evidence. (Doc. 12-1 at ¶ 33; Doc. 12-2 at 109). On August 7, 2025, the immigration judge set an individual hearing for November 3, 2025, to adjudicate Petitioner's application for relief from removal. (Doc. 12-1 at ¶34).

Petitioner has remained in mandatory custody under 8 U.S.C. § 1226(c) while his removal proceedings, and application for relief from removal, are being adjudicated. (Doc. 12-1 at ¶35).

Petitioner, represented by counsel, filed his initial petition for habeas corpus on July 28, 2025. (Doc. 1). The Court set a briefing schedule on July 30, 2025. (Doc. 4). Petitioner filed a First Amended Petition ("FAP") for Writ of Habeas Corpus on August 12, 2025, requesting the Court to assume jurisdiction over this matter, "hold a hearing before this Court if warranted" to determine that Petitioner's detention is not justified, or in the alternative, issue a writ of habeas corpus and "order [Petitioner's] release within 30 days unless Respondent schedules a [detention redetermination] hearing before an IJ," issue a declaration that Petitioner's ongoing prolonged detention violates the Due Process Clause of the Fifth Amendment"; and award Petitioner his reasonable costs and fees under the Equal Access to Justice Act, 28 U.S.C. §2412.  (Doc. 8 at 18-

19). Following Petitioner's filing of the FAP, the Court reset the case management deadlines for filing a Response and Traverse (Doc. 9). Respondent timely filed a Response on September 26, 2025. (Doc. 12). Petitioner filed his Traverse on October 27, 2025 (Doc. 13).

## II.        APPLICABLE LAW AND ANALYSIS

### A. Exhaustion

"Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing v. Ashcroft*, 370 F.3d 994, 997-98 (9th Cir. 2004) (*citing McKart v. United States*, 395 U.S. 185, 193 (1969)). "Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Id.* at 997 (*citing Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit "requires 'as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.'" *Castro-Cortez*, 239 F.3d at 1047 (*citing United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). While the exhaustion requirement is prudential, it is not jurisdictional for habeas claims and "courts have discretion to waive a prudential requirement." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (*citing El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)).

Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citations omitted); *Hernandez*, 872 F.3d at 988 (9th Cir. 2017). "[E]ven if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Id.* (*quoting Laing*, 370 F.3d at 1000 (citation and quotation marks omitted)).

Here, Petitioner requested, and was granted, a bond redetermination hearing on October 3, 2024, and on March 14, 2025. (Doc. 12-1 at ¶26; Doc. 12-2 at 100-04). Each time, Plaintiff withdrew his request without prejudice before the hearing took place and waived his appeal to the order cancelling the hearing. (*Id.*). Petitioner asserts that he requested a bond hearing in March 2025, but the immigration judge denied the request citing the "mandatory detention provision under 8 U.S.C. § 1225(b)(1)(B)(ii)" associated with his asylum application. (Doc. 8 at ¶21). While Petitioner provides no evidence of this request or ruling, the record includes an EOIR order noting that Petitioner withdrew his request for a bond hearing on March 20, 2025. (Doc. 22-2 at 103-04). Despite this discrepancy, Petitioner does not dispute that he requested two bond hearings during the pendency of his removal proceedings or that each request was granted before he withdrew his requests. After considering the *Puga* factors, the Court will waive the prudential exhaustion requirement and consider the amended habeas petition.

First, an administrative appellate record is not necessary to resolve the legal questions presented by Petitioner as to 1) whether detention that exceeds six months without a bond hearing is per se unconstitutional; 2) whether Petitioner's ongoing detention without a bond hearing is unreasonably prolonged and violates the Due Process Clause of the Fifth Amendment; and 3) whether the Court or the immigration judge must hold a bond hearing to determine if Petitioner presents a risk of flight or danger to the community in light of available alternatives to detention and to consider alternatives to detention. (Doc. 8 at 8-17).

Second, waiver of the prudential exhaustion requirement will not "encourage the deliberate bypass of the administrative scheme" in future cases. *Hernandez*, 872 F.3d at 989. Once the Court determines whether Petitioner's continued detention without a bond hearing violates due process as applied to his circumstances, these issues "should cease to arise." *Id.* Any risk of deliberate bypass of administrative procedures is further reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future plaintiffs allege a "colorable" constitutional or legal challenge to the government's procedures. *Id.* (*citing Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)).

Third, the Court must consider whether "administrative review is likely to allow the

6

agency to correct its own mistakes and to preclude the need for judicial review." *Puga*, 488 F.3d at 815. "However, there is no requirement of exhaustion where resort to the agency would be futile." *El Rescate Legal Servs.*, 959 F.2d at 747 (*citing SAIF Corp./Oregon Ship v. Johnson,* 908 F.2d 1434, 1441 (9th Cir.1990)). "Thus, where the agency's position on the question at issue 'appears already set,' and it is 'very likely' what the result of recourse to administrative remedies would be, such recourse would be futile and is not required." *Id.* (*quoting SAIF Corp./Oregon Ship,* 908 F.2d at 1441)*; see Mathews v. Eldridge,* 424 U.S. 319 (1976) (finding exhaustion not necessary when it would be "unrealistic" to expect an adjudicating agency to make substantial changes to an administrative regime in light of a single claimant's raising of a constitutional challenge).

Petitioner contends that he requested a bond hearing but the immigration judge denied his request in March 2025, "citing the mandatory detention provision under 8 U.S.C. § 1225(b)(1)(B)(ii)" which states "[i]f the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien shall be detained for further consideration of the application for asylum." (Doc. 8 at ¶21); 8 U.S.C. § 1225(b)(1)(B)(ii). Petitioner argues that "accordingly, the Immigration Court lacks jurisdiction and authority to provide [Petitioner] with a bond hearing to determine whether [his] detention is justified" citing 8 U.S.C. §§ 1225(b); 1226(c). (*Id.*). Respondent do not address exhaustion of administrative remedies in their opposition to habeas relief. While the Court has not been presented with evidence of this denial, or basis for denial, the Court is aware that immigration judges have recently been denying requests for bond hearings, citing lack of jurisdiction. *See, e.g.*, *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025).

Because Respondent contends that Petitioner is subject to indefinite mandatory detention under 8 U.S.C. § §1226(c) (Doc. 12 at 5), under that framework, Petitioner has no statutory right to a bond hearing during his course of detention and therefore lacks recourse through statutory or administrative means. *Avilez v. Garland*, 69 F.4th 525, 533-34 (9th Cir. 2023) (*citing Jennings v. Rodriguez*, 583 U.S. 281, 303, 305-06 (2018) ("We hold that § 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal

7

proceedings 'only if' the alien is released for witness-protection purposes" and "§ 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'")).  Thus, and because Respondents do not object to and do not otherwise address Petitioner's arguments that exhaustion should be waived for futility and on grounds that continued detention causes him irreparable harm, the Court will recommend that the prudential exhaustion requirement for Petitioner's claim for habeas corpus relief be waived. *See Hernandez*, 872 F.3d at 989 ("[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'") (citing *Laing*, 370 F.3d at 1000).

### B.  Immigration Detention Statutes and Bond Hearings

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ("Section 1225(b)"), 1226(a) ("Subsection A"), 1226(c) ("Subsection C"), and 1231(a) ("Section 1231(a)")." *Avilez*, 69 F.4th at 529. A noncitizen's place "within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Only Subsection A and Subsection C are directly relevant in this case.

Section 1226 states:

> **(a) Arrest, detention, and release**
> On a warrant issued by the Attorney General, an alien
>  may be arrested and detained pending a decision on whether the alien is to be
> removed from the United States. Except as provided in subsection (c) and
> pending such decision, the Attorney General—
>
> > **(1)** may continue to detain the arrested alien; and
> > **(2)** may release the alien on—
> >
> > > **(A)** bond of at least $1,500 with security approved by, and
> > > containing conditions prescribed by, the Attorney General; or
> > >
> > > **(B)** conditional parole; but

8

**(3)** may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

**(b) Revocation of bond or parole**

The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien.

**(c) Detention of criminal aliens**

**(1) Custody**

The Attorney General shall take into custody any alien who—

**(A)**     is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

**(B)** is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

**(C)** is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or

**(D)** is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

**(2) Release**

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c).

9

Subsection A is the default detention statute for noncitizens in removal proceedings and applies to noncitizens "[e]xcept as provided in [Subsection C]." 8 U.S.C. § 1226(a). Subsection A states that "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." *Id.* (emphasis added). The statute also provides for release on bond or conditional parole. *Id.* at § 1226(a)(2). Because of Subsection A's permissive language—specifically, the word "may"—detention under Subsection A is discretionary. *Avilez*, 69 F.4th at 530; s*ee Prieto-Romero*, 534 F.3d at 1059.

However, Subsection C provides for the detention of criminal noncitizens and states that "[t]he Attorney General *shall* take into custody any alien who" is deportable or inadmissible based on a qualifying, enumerated offense. 8 U.S.C. § 1226(c) (emphasis added); *Keo v. Warden of Mesa Verde ICE Processing*, No. 1:24-cv-00919-HBK, 2025 WL 1029392, *4 (E.D. Cal., Apr. 7, 2025), *appeal dismissed sub nom. Keo v. Warden*, No. 25-3546, 2025 WL 2528945 (9th Cir. June 27, 2025). Release under Subsection C is limited to certain witness protection purposes. *See* 8 U.S.C. § 1226(c)(2); *Avilez*, 69 F.4th at 530. "Because of its use of the word 'shall,' detention under Subsection C is mandatory," *Avilez*, 69 F.4th at 530, and "*must* continue 'pending a decision on whether the alien is to be removed from the United States,'" *Jennings* 583 U.S. 281, 303, 305-06.  As the Ninth Circuit has noted:

> The differences in the discretionary or mandatory language of Subsections A and C respectively have significant consequences. Under Subsection A—the default detention provision—a noncitizen is entitled to a bond hearing at which the IJ considers whether the noncitizen is a flight risk or a danger to the community. *See Jennings*, 138 S. Ct. at 847 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)."); *see also Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011). By contrast, under Subsection C, which applies to noncitizens convicted of certain crimes, a noncitizen is not statutorily entitled to a bond hearing. *See Jennings*, 138 S. Ct. at 846–47.

*Avilez*, 69 F.4th at 530.

Here, the parties do not dispute that Petitioner's 2002 conviction is an "aggravated felony" rendering him deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) and that Petitioner is currently detained subject to § 1226(c). *See* 8 U.S.C. § 1101(a)(43)(B) (defining "aggravated felony" as "(B) illicit trafficking in a controlled substance (as defined in section 802 of Title 21, including a

10

drug trafficking crime (as defined in section 924(c) of Title 18")). Under such circumstances, by "expressly stating that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative prohibition on releasing detained aliens under any other conditions." *Romero-Romero v. Wofford*, No. 1:24-CV-00944-SKO (HC), 2025 WL 391861, at *3 (E.D. Cal. Feb. 4, 2025), *report and recommendation adopted as modified*, 2025 WL 3154399 (E.D. Cal. Nov. 12, 2025) (internal quotation marks omitted) (*citing Jennings*, 583 U.S. at 304). In other words, under Supreme Court precedent, § 1226(c) mandates detention of any alien falling within the statute's scope (absent application of an exception not operative here) without the benefit of a bond hearing. *Avilez*, 69 F.4th at 530. *See Nielsen v. Preap*, 586 U.S. 392, 408 (2019) (noting that aliens arrested under § 1226(c) "must be detained without a bond hearing until the question of their removal is resolved").

Here, Petitioner does not meet the statutory conditions for release. Therefore, statutorily, § 1226(c) mandates detention. Petitioner contends, however, that his detention has become unreasonably prolonged and asserts a due process challenge to continued detention without a bond hearing under the Fifth Amendment's Due Process Clause.

### C. Due Process and Mandatory Detention under § 1226(c)

Petitioner argues that his (now) seventeen-month detention without a bond hearing violates due process. "The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (*citing* U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *Id.* (*citing United States v. Salerno*, 481 U.S. 739, 746 (1987)). "[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" *Rodriguez v. Robbins* (*Rodriguez II*), 715 F.3d 1127, 1134 (9th Cir. 2013) (*quoting Rodriguez v. Hayes* (*Rodriguez I*), 591 F.3d 1105, 1114 (9th Cir. 2010)).

11

Another judge of this Court has aptly condensed the holdings of the key Supreme Court and Ninth Circuit rulings applicable here, and the undersigned adopts that analysis herein:[1]

> In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a facial due process challenge to mandatory detention under 8 U.S.C. § 1226(c). *Demore* distinguished its decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001) by emphasizing detention under § 1226(c) has a "definite termination point" and "in the majority of the cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*." *Id.* at 529 (noting that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days" and "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter").[2] However, Justice Kennedy's concurring opinion, which created the majority rejecting the facial challenge to mandatory detention under 8 U.S.C. § 1226(c), specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Demore*, 538 U.S. at 532 (Kennedy, J., concurring).
>
>     …
>
> In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Supreme Court rejected the Ninth Circuit's interpretation that § 1226(c) included "an implicit 6–month time limit on the length of mandatory detention" and reversed *Rodriguez III*, holding that the Ninth Circuit misapplied the constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." *Jennings*, 583 U.S. at 296, 304, 306. The Supreme Court remanded the case to the Ninth Circuit "to consider [the] constitutional arguments on their merits." *Id.* at 312. The Ninth Circuit, in turn, remanded the case to the district court to consider the constitutional arguments in

---

[1] *See Lopez v. Garland*, 631 F. Supp. 3d 870, 875-76 (E.D. Cal. 2022).  The undersigned's recitation of the *Lopez* decision above incorporates slight citation and other modifications.

[2] "Thirteen years after the decision in *Demore*, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors.'" *Rodriguez v. Nielsen*, No. 18-cv-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citations omitted). Although the "Supreme Court had inferred from the government's brief in *Demore* that in cases in which the alien appeals, the time of detention was 'about five months,'" the government's 2016 letter clarified that for years 1999–2001, the "length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." *Id.* (citations omitted).

> [I]n cases in which an appeal *was* filed, in most years the *average* length of detention was more than 300 days, or more than double the five-month estimate the Court relied on in *Demore*. The data from the *Jennings* case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years. Indeed, when the GAO conducted a study, it found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days. *Rodriguez*, 2019 WL 7491555, at *5 (citations omitted).

12

the first instance, but noted that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 255, 256 (9th Cir. 2018).

Since the *Rodriguez* remand, there has been "a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional." (*quoting Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019)); *see Martinez v. Clark*, 36 F.4th 1219, 1223 (9th Cir. 2022) ("Whether due process requires a bond hearing for alien detained under § 1226(c) is not before us today. And we take no position on that question."), *vacated and remanded on other grounds*, 144 S. Ct. 1339 (2024); *Avilez*, 69 F.4th at 538 (declining to make a determination on whether due process required a bond hearing for noncitizen detained under § 1226(c) and remanding to district court for consideration of due process claim). …

The Ninth Circuit has yet to hold squarely whether due process *requires* a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c), but it has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" *Martinez*, 36 F.4th at 1223 (citation omitted), *vacated on other grounds*, 144 S. Ct. 1339 (2024). *Cf. Hernandez*, 872 F.3d at 976 ("the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process") with *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203 (9th Cir. 2022) (Bumatay, concurring) (observing that "it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute," and noting that both the Ninth Circuit "and the Supreme Court have repeatedly declined to decide constitutional challenges to bond hearing procedures in the immigration detention context") (emphasis in original).

### 1.   Detention Exceeding Six Months Is Not Per Se Unconstitutional

Petitioner argues that his detention for over 12 months is not "brief" and argues that "[d]etention without a bond hearing is unconstitutional." (Doc. 8 at ¶33). However, the Supreme Court in *Jennings v. Rodriguez*, specifically rejected this argument. *Jennings,* 583 U.S. at 303-04.

///

## 2. As Applied Due Process Challenge

Petitioner next argues that his detention has become unreasonably prolonged and constitutes a due process violation as applied to the facts and circumstances in his case. (Doc. 8 at ¶¶35-42). Even if continued detention is permitted by statute, due process requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Prieto-Romero*, 534 F.3d at 1065 (*quoting Zadvydas,* 533 U.S. at 690–91(internal quotation marks omitted)). As such, Petitioner's as-applied constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)); *see R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025).

### i. Liberty interest

The Court first considers whether Petitioner has a protected liberty interest under the Due Process Clause. Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *Young v. Harper*, 520 U.S. 143, 147–49 (1997) (due process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). "A protected liberty interest may arise from a conditional release from physical restraint," such as where a noncitizen is arrested but released on supervision pending removal proceedings. *Jose B.M. v. Murray, et al.*, No. 1:25-cv-01584-KES-CDB, 2026 WL 19121, at *4 (E.D. Cal. Jan. 4, 2026) (citing *Young*, 520 U.S. at 147–49); *see, e.g. Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *12 (D. Ariz. Aug. 11, 2025) (same), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025).

14

"There is also a meaningful distinction between a challenge to an initial period of detention, at issue in *Demore*, and a challenge to *re-detention* after a court has previously granted release on bond pending immigration proceedings." *Carballo v. Andrews, et. al*, No. 1:25-cv-00978-KES-EPG, at *7 (E.D. Cal. Aug. 15, 2025). "'[T]he liberty interests of [an individual] who is re-arrested differ from the liberty interests of a detained person.'" *Id.* (*quoting Guillermo M.R. v. Kaiser*, No. 25-cv-05436-RFL, 2025 WL 1810076, at *1 (N.D. Cal. June 30, 2025)). "In the former situation, where ICE detains an individual upon their release from a correctional facility, without any substantial intervening period of release, that individual has no opportunity 'to form the [] enduring attachments of normal life.'" *Id.* (*quoting Morrissey*, 408 U.S. at 482).

If Petitioner had been released from custody following service of his prison sentence and, sometime later, arrested by ICE and detained pending removal proceedings, Petitioner could argue he has a liberty interest in release and be entitled to a bond hearing. But that is not the case here. At the time of his most recent entry, Petitioner had been living outside of the United States and was arrested for illegal entry at the San Ysidro Port of Entry. He was not released into the United States on parole or supervision; instead, the district court found him to be a flight risk and detained him pending completion of criminal proceedings for illegal reentry. After pleading guilty to a single felony count of Attempted Reentry of Removed Alien under 8 U.S.C. § 1326 and agreeing to be detained and deported after he served his sentence, Petitioner was transported from pretrial detention to incarceration at the BOP to complete his criminal sentence. On the day he was released from BOP custody, he was taken into ICE custody under § 1226(c) where he has remained pending removal proceedings.

Thus, in this case, Petitioner does not have a protected liberty interest in his release, and due process does not require a bond hearing. Nevertheless, Petitioner argues that he has general liberty interest in being free from detention because "'[f]reedom from imprisonment…lies at the heart of the liberty [the Due Process Clause] protects.'" (Doc. 8 at ¶39) (*quoting Zadvydas*, 533 U.S. at 690). But as the Supreme Court made clear in *Demore*, the due process holding in *Zadvydas* attaches in a starkly distinct context not applicable here – where the noncitizen is the subject of a final order of removal and a 90-day statutory "removal period" operates. *See Lopez*,

15

631 F. Supp.3d at 875. And even if the Court were to find a general liberty interest in being free from restraint, the Court would still recommend the habeas petition be denied for the reasons described below.

### ii. Procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution

Were the Court to find that Petitioner's continuous detention implicated a protectible liberty interest, the Court next would determine what process, if any, is due. "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (*quoting Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)). "A survey of decisions across the Circuits, and among the district courts within the Ninth Circuit, reveals a myriad of overlapping balancing tests applied to determine whether a petitioner's due process rights under the Fifth Amendment were violated when they were not afforded a bond hearing while detained under § 1226(c)." *Keo*, 2025 WL 1029392, at *5 (summary of various balancing tests).

Petitioner argues that this Court should apply the balancing test set forth by the Supreme Court in *Mathews v. Eldridge*. (Doc. 8 at ¶ 10). Respondent contends that the unique constitutional treatment of detained noncitizens means that the Court should not apply the traditional *Mathews* test but instead should adopt the court's reasoning in *Keo*. The court in *Keo* found that the "threshold question in considering Petitioner's claims of unreasonably prolonged detention under § 1226(c) without a bond hearing is whether Petitioner's continued detention serves the purported immigration purpose and has a definite termination point, as opposed to any 'balancing test' to determine whether procedural due process is due based largely on the length of Petitioner's detention without a bond hearing." *Keo*, 2025 WL 1029392, at *5. The *Keo* court dismissed the habeas petition, concluding that petitioner had been convicted of an aggravated felony that mandated detention under §1226(c), petitioner's detention was not indefinite because

16

"definite termination point" at the conclusion of his ongoing legal challenges, and no indication existed that removal proceedings do not serve their intended purpose or are intended to "incarcerate him for other reasons." *Id.* As such, the Court found "no due process violation in Petitioner's continued detention under § 1226(c) without a bond hearing at this time." *Id.* (citing *Demore*, 538 U.S. at 527, 538). The court noted that "[s]hould circumstances change and continued detention appear to be indefinite in nature, due process may require a different outcome." *Id.* (internal citations omitted) (*citing Romero-Romero*, 2025 WL 391861, at *9).

In this case, the Court acknowledges that the Supreme Court, when confronted with constitutional challenges to immigration detention, has not resolved them through express application of *Mathews. See, e.g., Demore*, 538 U.S. at 523, 526–29; *see also Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims."). However, the Ninth Circuit has noted that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206-07 (noting that many courts have applied the *Mathews* test in considering due process challenges in the immigration context).

A significant number of district courts in the Ninth Circuit have employed the *Mathews* test where a noncitizen arrested by immigration authorities is released, only to be re-arrested following a substantial passage of time, in evaluating whether due process entitles a petitioner to a bond hearing. *See, e.g., Doe v. Becerra,* 787 F. Supp. 3d 1083, 1093-94 (E.D. Cal. 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025); *Romero-Romero*, 2025 WL 391861, at *4–7. Here, had Petitioner persuasively demonstrated his continued detention implicates a protectible liberty interest, Petitioner's due process allegation would be sufficiently analogous such that the Court would find the *Mathews* test appropriate. *See e.g. Romero-Romero*, 2025 WL 391861, at *4–5 (applying *Mathews* to questions of due process for petitioner in mandatory detention under

17

§ 1226(c)). Out of an abundance of caution, the Court applies the *Mathews* factors to Petitioner's as-applied due process challenge.

The Supreme Court in *Mathews* identified three factors bearing on the constitutional need for procedural protections: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 334-35.

i.      *Petitioner's Private Interest*

The first *Mathews* factor is Petitioner's private liberty interest. As the Court noted above, Petitioner has not established a protected liberty interest. Analyzing *Mathews* further, this factor still does not weigh in Petitioner's favor.

In *Rodriguez Diaz*, the Ninth Circuit considered the discretionary detention outlined in § 1226(a) and assumed that petitioner's detention qualified as "prolonged" in a "general sense" since he was detained for 14 months following his first bond hearing. *Rodriguez Diaz*, 53 F.4th at 1207. The Ninth Circuit "held, more generally, that an individual's private interest in freedom from prolonged detention is unquestionably substantial." *Id.* (internal quotations omitted). Here, Petitioner has been detained for 17 months.

But the Ninth Circuit noted that "it is important not to overstate the strength of [petitioner's] showing under the first *Mathews* factor, either." *Id.* When the Ninth Circuit previously referred to detentions longer than six months as "prolonged," the Circuit did so "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them." *Id.* Here, Petitioner requested and received a bond hearing date approximately four months after he was detained under § 1226(c), but he withdrew his request before the hearing took place. He later sought another bond hearing five months later, received a hearing date, but again withdrew his request. While Petitioner has been detained for

18

approximately 17 months now, he has not been without access to process during that time because two bond hearings before an immigration judge were available to him within the first nine months of his detention.

Additionally, as in *Rodriguez Diaz*, the Court also cannot overlook that most of the period of Petitioner's detention arose from the fact that he requested various continuances of scheduled hearings and withdrew requests for scheduled hearings within a week of the hearing date. *See Demore*, 538 U.S. at 531 n.14 ("'[T]he legal system is replete with situations requiring the making of difficult judgments as to which course to follow,' and, even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices.") (*quoting McGautha v. California*, 402 U.S. 183, 213 (1971)); *see also Prieto-Romero*, 534 F.3d at 1063–65 & n.9 (holding that a noncitizen's detention was not unconstitutionally indefinite when it was prolonged by a challenge to his removal order, and distinguishing a case in which the government made an "unusual move" that delayed resolution) (quotations omitted).

In short, in evaluating Petitioner's interests under the first prong of the *Mathews* analysis, the Court "cannot simply count his months of detention and leave it at that." *Rodriguez Diaz*, 53 F.4th at 1208. The Court "must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge" his removal proceedings. *Id.* Moreover, this is not a case where detention is indefinite. As noted by the Supreme Court in *Jennings,* "detention under § 1226(c) has a definite termination point: the conclusion of removal proceedings." *Jennings,* 583 U.S. at 304; *see Romero-Romero*, 2025 WL 391861, at *9.

As such, the first *Mathews* factor does not weigh in Petitioner's favor.

ii.      *Risk of an Erroneous Deprivation*

The second *Mathews* factor is "the risk of an erroneous deprivation of Petitioner's interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The Supreme Court in *Jennings* stressed that, under the language of 8 U.S.C. § 1226, noncitizens detained under Subsection C may be released on bond only if "doing so is necessary for witness-protection purposes and ... [they] will not pose a danger

19

or flight risk." *Avilez*, 69 F.4th at 534 (*quoting Jennings*, 583 U.S. at 287). "In no uncertain terms, the Supreme Court stated that Subsection C carves out a statutory category of aliens who may *not* be released under [Subsection A]." *Id.* Given the mandatory language of § 1226(c), the risk of Petitioner being erroneously detained is low. This second factor weighs in favor of the Respondent.

Even if the Court goes further in its analysis and assumes Petitioner's detention has been prolonged, this second factor still weighs in the favor of the Respondent. Despite the lack of specific guidance from the Supreme Court or the Ninth Circuit on whether due process *requires* a bond hearing under § 1226(c), multiple United States Circuit Courts and "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)." *Keo*, 2025 WL 1029392, at *5 (*quoting Martinez*, 36 F.4th at 1223).

Although it is undisputed that Petitioner is mandatorily detained under §1226(c), as described above, he still requested and received two bond hearing dates while removal proceedings have been pending. He withdrew both requests for bond hearings and waived his right to appeal the orders canceling the hearings. While he may not have wanted to continue with the bond hearings, he still had access to procedural safeguards against unreasonably prolonged detention. His removal proceedings have been ongoing with individualized hearings, delayed only by Petitioner's requests for continuances. These procedures have ensured that the risk of erroneous deprivation would be "relatively small." *See Yagman v. Garcetti*, 852 F.3d 859, 865 (9th Cir. 2017) (upholding a scheme that offered "an opportunity to present evidence and arguments" that would be "considered by the reviewer").

The Court also notes that Petitioner is receiving further procedural protections on the merits of his application for relief from removal. *See Rodriguez Diaz*, 53 F.4th at 1209–10. This includes the opportunity to pursue his asylum application and be heard on the merits.

Petitioner argues that his individualized medical circumstances warrant additional procedures. (Doc. 8 at ¶37). Petitioner has been receiving medical treatment for an eye condition

but argues that the treatment while in detention has been delayed and inadequate and has negatively impacted his eyesight. (*Id.*). Therefore, he argues that he should be given a bond hearing and released from custody so he can seek better medical care.

Petitioner's argument addresses the conditions of his confinement and cannot be raised in a habeas petition. Instead, he must pursue a §1983 civil rights action or pursue other remedies, such as a claim under the Federal Tort Claims Act (FTCA) (which the record reveals has been filed (Doc. 13-3)). *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) (habeas corpus proceedings proper mechanism for prisoner to challenge "legality or duration" of confinement but a civil rights action is proper method of challenging "conditions of confinement) (*citing Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Accordingly, the second *Mathews* factor weighs in favor of the Respondent.

### iii.     Government's Interest

As the Supreme Court has recognized, there is little question that the civil detention of noncitizens during removal proceedings can serve a legitimate government purpose, which is "preventing deportable ... aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Prieto-Romero*, 534 F.3d at 1065 (*quoting Demore,* 538 U.S. at 528). Regarding the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. In *Rodriguez Diaz*, the Ninth Circuit noted the government's strong interest in enforcing our nation's immigration laws. *See, e.g., Romero-Romero*, 2025 WL 3154399, at *1 (noting in a similar habeas case brought by a petitioner detained pursuant to § 1226(c) that "the case presents compelling regulatory goals in relation to detention including protection of the public and successful removal if ordered") (citing *Rodrigez Diaz*, 53 F.4th at 1208). For the same reasons, this Court concludes that the government's interests are significant.

Given all of this, it is undisputed that Petitioner's detention is mandated under § 1226(c) and he does not meet any of the statutory conditions for release. *See* 8 U.S.C. § 1226(c);

*Jennings*, 583 U.S. at 303-04. As discussed above, Petitioner has not been released from criminal or immigration custody since his arrest at the port of entry and has no liberty interest entitling him to a hearing at this time. Even if the Court were to go further in its analysis, the *Mathews* factors also weigh in favor of the Respondent, confirming that there is no due process violation in Petitioner's continued detention under § 1226(c) without a bond hearing at this time. *See Romero-Romero*, 2025 WL 391861, at *9 ("Should circumstances change and continued detention appear to be indefinite in nature, due process may require a different outcome."). Accordingly, the Court recommends that the underlying habeas petition be denied.[3]

## III.        **CONCLUSION AND RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that:

1.   Petitioner's amended petition for writ of habeas corpus (Doc. 8) be DENIED; and

2.   The Clerk of the Court be DIRECTED to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:     **January 14, 2026**                                           

UNITED STATES MAGISTRATE JUDGE

---

[3] Because due process here does not require a bond hearing, the Court declines to consider Petitioner's argument as to what burden of proof the immigration judge should use at a bond hearing in a § 1226(c) mandatory detention. (Doc. 8 at ¶46).