UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROBERT MARTIN DALEY (A-037-333-892,

Plaintiff,

v.

TONYA ANDREWS,

Defendant.

No. 1:25-CV-00922-KES-CDB (HC)

ORDER DECLINING TO ADOPT FINDINGS AND RECOMMENDATIONS AND GRANTING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS

Docs. 8, 15

Petitioner Robert Martin Daley is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner asserts that his prolonged detention without a hearing violates the Due Process Clause of the Fifth Amendment. He requests that the Court order his release, or in the alternative, order respondent to schedule a hearing before an immigration judge at which the government must establish by clear and convincing evidence that petitioner presents a risk of flight or danger. Doc. 8 at ¶¶ 3–5. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On January 14, 2026, the assigned magistrate judge issued findings and recommendations to deny petitioner's amended petition for writ of habeas corpus. Doc. 15. Those findings and recommendations were served upon all parties and contained notice that any objections thereto

were to be filed within fourteen (14) days after service. Petitioner filed objections to the findings and recommendations on January 28, 2026, and filed a supplemental declaration and exhibits in support on January 29, 2026. Docs. 16, 19. Respondent filed a response on January 30, 2026. Doc. 20.

In accordance with the provisions of 28 U.S.C. § 636(b)(1), the Court has conducted a de novo review of the case. Having carefully reviewed the file, the Court declines to adopt the findings and recommendations. Petitioner has now been civilly detained in immigration detention for more than two years without a bond hearing. Petitioner's immigration proceedings may have been extended because the government determined that petitioner had established a credible fear of returning to Jamaica, Doc. 12-1 at 6, and because petitioner has pending applications for asylum, withholding of removal, and relief under the Convention Against Torture, Doc. 8 at ¶ 20. But due process requires that, given petitioner's prolonged detention, he be afforded a bond hearing before an immigration judge. Accordingly, for the reasons set forth below, the petition is granted.

## I. BACKGROUND

Petitioner was born in Manchester, Jamaica and is a Jamaican citizen. Doc. 8 at ¶ 14; Doc. 12-2 at 56. He came to the United States in 1982 at the age of 13 years old and was accorded lawful permanent resident status. Doc. 8 at ¶ 15.

Petitioner was subsequently convicted of state felony drug offenses in 1993 and a federal felony drug offense in 2002. Docs. 12-2 at 14–15, 56; 13-4 at 2–17. In 2005, petitioner was placed in Immigration and Customs Enforcement ("ICE") custody and deported to Jamaica. Doc. 12-2 at 15–16. Petitioner alleges that in Jamaica he faced persecution and threats against his life due to his cooperation with U.S. law enforcement.[1] Doc. 13-1, Daley Decl. at ¶¶ 7–9. Petitioner returned to the United States and, in 2007, he was arrested on charges related to identity theft and illegal re-entry. Doc. 12-2 at 16. After petitioner failed to appear in court, a

---

[1] Regarding the 2002 conviction, petitioner cooperated with government investigations into the related drug conspiracy and helped law enforcement recover $300,000 in drug proceeds. Docs. 8 at ¶ 16; 13-1, Declaration of Robert Martin Daley ("Daley Decl.") at ¶ 5; 13-4 at 6:1-12.

bench warrant was issued for absconding. *Id.* In 2009, the U.S. marshals located petitioner, who was in possession of fraudulent identification documents, and petitioner was charged with illegal re-entry. *Id.* at 16–17, 29–31. In 2012, he was transferred to ICE custody and deported to Jamaica. *Id.* at 17. After again re-entering the United States, petitioner was convicted in 2016 of illegal re-entry. *Id.* at 55. In 2019, he was taken into ICE custody and deported to Jamaica. *Id.* at 65.

On October 17, 2022, petitioner attempted to enter the United States from Mexico at the San Ysidro, California Port of Entry, when he was arrested for illegal re-entry. *Id.* at 64–65. After completing his sentence for illegal re-entry on June 28, 2024, petitioner was taken into DHS custody; he was detained under 8 U.S.C. § 1226(c) pending removal proceedings, initially at the Golden State Annex Detention Facility and subsequently at California City Detention Center in California City, California. Docs. 8 at ¶¶ 1, 20; 13-2, Declaration of Jin Niu ("Niu Decl.") at ¶ 2; *see* Doc. 12-2 at 84, 90.

On August 2, 2024, DHS filed a Notice to Appear charging petitioner as subject to removal from the United States pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I). Doc. 12-2 at 96. DHS also determined that petitioner had established a credible fear of returning to Jamaica. Doc. 12-1 at 6. Petitioner has been seeking asylum, withholding of removal, and relief under the Convention Against Torture since he has been in detention. Doc. 8 at ¶ 20.

On October 17, 2024, an immigration judge held a hearing for petitioner. Doc. 12-1, Declaration of Armando Meneses ("Meneses Decl.") at ¶ 26. At the hearing, the immigration judge indicated that the immigration court lacked jurisdiction to grant petitioner bond. Doc. 19-1 at 5. The immigration judge gave petitioner, who appeared pro se, the option to either withdraw the bond request without prejudice or have the judge issue an order denying the request for bond due to lack of jurisdiction. *Id.* at 5:19–23. The immigration judge explained that, with a withdrawal, petitioner could re-request a bond hearing if his status changed, and petitioner opted to withdraw the request without prejudice. Docs. 19-1 at 6:1–8; 12-2 at 100–01.

On March 20, 2025, an immigration judge held another hearing for petitioner. Doc. 12-1, Meneses Decl. at ¶ 29. At the hearing, the immigration judge again gave petitioner, who was

represented by counsel, the option to either withdraw the bond request without prejudice or have the judge issue an order denying the request for bond due to lack of jurisdiction. Doc. 19-2 at 6:11–17. Petitioner chose to withdraw the request without prejudice. Docs. 19-2 at 18–25; 12-2 at 103–04. Petitioner was granted four continuances—two to secure counsel and two to file more supporting evidence. Docs. 12-1, Meneses Decl. at ¶ 25, 32–33; 12-2 at 106, 109.

Petitioner has remained in mandatory custody under 8 U.S.C. § 1226(c) while his removal proceedings, and application for relief from removal, are being adjudicated. Doc. 12-1 at ¶ 35. Petitioner, represented by counsel, filed a petition for writ of habeas corpus on July 28, 2025 and a first amended petition for writ of habeas corpus on August 12, 2025. Docs. 1, 8. Respondent filed a response on September 26, 2025 and petitioner filed a traverse on October 27, 2025. Docs. 12, 13.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A writ of habeas corpus is a critical check upon the executive power, ensuring that individuals are not detained "except in accordance with law." *Hamdi*, 542 U.S. at 525 (citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). The "traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The district court has jurisdiction over challenges to immigration-related detention pursuant to 28 U.S.C. § 2241. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)).

## III. DISCUSSION AND ANALYSIS

### A. <u>Exhaustion</u>

Section 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001). The Ninth Circuit requires, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Id.* Prudential

exhaustion may be required when "'(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). But "even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2017)).

Here, while petitioner was scheduled for two bond hearings, both times the immigration judge informed petitioner that the immigration court lacked the jurisdiction to make a bond determination. Docs. 19–1 at 5:19–23; 19–2 at 6:11–17. Although petitioner chose to withdraw the request rather than have the judge issue an order denying the request for lack of jurisdiction, the effect is the same. Docs. 19–1 at 6:1–8; 19–2 at 18–25. Petitioner has not received a bond hearing at which he was permitted to present his case for why he should be released. And under 8 U.S.C. § 1226(c), he has no opportunity to do so. Thus, "pursuit of administrative remedies would be a futile gesture." *See Laing*, 370 F.3d at 1000. The court therefore waives the prudential exhaustion requirement. *See Hernandez*, 872 F.3d at 988 (affirming district court's decision to waive prudential exhaustion requirement when exhaustion would be futile).

**B. Procedural Due Process**

Petitioner argues that his now 25-month detention without a bond hearing is unreasonably prolonged and violates the Due Process Clause of the Fifth Amendment. Doc. 8 at ¶ 35. The Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The due process clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693.

Petitioner is detained pursuant to § 1226(c), which applies to noncitizens who are

"deportable or inadmissible based on a qualifying, enumerated offense." *Avilez v. Garland*, 69 F.4th 525, 530 (9th Cir. 2023). Detention under § 1226(c) is mandatory and under this statute, "a noncitizen is not statutorily entitled to a bond hearing." *Id.*

In *Demore v. Kim*, the Supreme Court upheld 8 U.S.C. § 1226(c) on a facial challenge. *Demore v. Kim*, 538 U.S. 510, 523 (2003). The Court explained that Congress enacted that provision because, in many cases, noncitizens with qualifying criminal convictions failed to appear for their proceedings or committed further crimes while their removal proceedings were pending. *See id.* at 518–20; *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (identifying prevention of flight and danger to the community as the two legitimate regulatory goals of immigration detention). *Demore* emphasized that in the "majority of cases," § 1226(c) detention "lasts for less than . . . 90 days" and that in the 15% of cases involving appeals, that additional process "takes an average of four months." *Id.* at 529. *Demore* rejected the petitioner's claim that it was unconstitutional to detain him for this "brief period." *Id.* at 523.

But "[d]ue process protections do not disappear simply because mandatory detention under Section 1226(c) is at least initially permissible." *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1079 (N.D. Cal. 2024). *Demore* rejected a facial challenge to § 1226(c), and to prevail on such a challenge, a plaintiff must show that a statute is "unconstitutional in every conceivable application." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). In contrast, an as-applied challenge requires a plaintiff to show only that "the application of the statute to a specific factual circumstance" is unconstitutional. *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011).

As other courts have explained in considering *Demore*, its conclusion that § 1226(c) is constitutional in some of its applications "does not mean that the Court does not have the power to grant petitions for habeas corpus raising *as-applied* constitutional challenges to [§ 1226(c)] detention . . . ." *Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022); *see also German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 208–10 (3d Cir. 2020) (noting that *Demore* involved a facial challenge and did not foreclose as-applied challenges); *Black v. Decker*, 103 F.4th 133, 149 & n.22 (2d Cir. 2024). Petitioner brings such an as-applied challenge,

arguing that his 25-month detention without a bond hearing has become unreasonably prolonged in violation of the Due Process Clause.

Procedural due process claims are analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

**1. Liberty Interest**

Petitioner has a clear liberty interest in securing his freedom from detention. "Protected liberty interests 'may arise from two sources—the Due Process Clause itself and the laws of the States.'" *Thompson*, 490 U.S. at 460 (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)). Petitioner's interest arises directly from the Due Process Clause. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see Foucha v. Louisiana*, 504 U.S. 71, 86 (1992) ("Freedom from physical restraint [is] a fundamental right[.]").

The Ninth Circuit has recognized that § 1226(c) detainees have a "liberty interest" in "freedom from prolonged detention," *Singh v. Holder*, 638 F.3d 1196, 1204–05 (9th Cir. 2011), and other courts in this circuit have recently held that a noncitizen "has a protected liberty interest in avoiding prolonged detention that has not been justified," *Maria v. Warden*, No. 1:26-CV-03957-TLN-CKD, 2026 WL 2070039, at *2 (E.D. Cal. July 17, 2026); *Shehata v. Chestnut*, No. 1:26-CV-02840-DJC-SCR, 2026 WL 1257227, at *3 (E.D. Cal. May 7, 2026), *report and recommendation adopted*, No. 1:26-CV-02840-DAD-SCR, 2026 WL 1712600 (E.D. Cal. June 12, 2026) ("Petitioner has a strong liberty interest in avoiding prolonged detention without any bond hearing[.]"). As petitioner has already been detained for more than two years and his detention could continue for an unidentified and indefinite period—he has established a clear

liberty interest.[2]

**2. Necessary Procedures**

Courts in this circuit have taken a variety of approaches to decide whether due process requires a bond hearing in a particular immigration detention case. *See, e.g.*, *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying the *Mathews* test to determine whether a noncitizen detained pursuant to 8 U.S.C. § 1226(a) was entitled to a second bond hearing); *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (considering "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government" in the § 1226(c) context); *Banda*, 385 F. Supp. 3d at 1117 (W.D. Wash. 2019) (considering six factors, including "the likelihood that the removal proceedings will result in a final order of removal," in the § 1225(b) context).

In *Mathews v. Eldridge*, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

---

[2] The findings and recommendations relied in part on this Court's order in *Carballo v. Andrews, et al.*, No. 1:25-cv-00978-KES-EPG, at *7 (E.D. Cal. Aug. 15, 2025), in concluding that petitioner had no liberty interest in his freedom from detention. But the *Carballo* decision did not concern a prolonged detention claim. In *Carballo*, the court reasoned: "There is [] a meaningful distinction between a challenge to an initial period of [§ 1226(c)] detention, at issue in *Demore*, and a challenge to *re-detention* [under § 1226(c)] after a court has previously granted release on bond pending immigration proceedings," which was at issue in that case. *Carballo v. Andrews, et. al*, No. 1:25-cv-00978-KES-EPG, at *7 (E.D. Cal. Aug. 15, 2025). "'[T]he liberty interests of [an individual] who is re-arrested differ from the liberty interests of a detained person.'" *Id.* (*quoting Guillermo M.R. v. Kaiser*, No. 25-cv-05436-RFL, 2025 WL 1810076, at *1 (N.D. Cal. June 30, 2025)). But this discussion in *Carballo* concerned the constitutionality of the petitioner's *re-detention* without a bond hearing in the circumstances of that case, not whether a § 1226(c) detainee has a liberty interest when his detention has become prolonged. In *Demore*, "Justice Kennedy's concurring opinion, which created the majority, reasoned that under the Due Process Clause, a noncitizen could be entitled to 'an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified.'" *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1114 (W.D. Wash. 2019) (quoting *Demore*, 538 U.S. at 532 (Kennedy, J., concurring)).

424 U.S. 319, 335 (1976).

The Ninth Circuit has found that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206. Courts in the district have frequently applied the *Mathews* factors in the context of a noncitizen detained pursuant to § 1226(c) for a prolonged period. *See, e.g.*, *Christian Medina Guel v. Chestnut*, No. 1:26-CV-0426-DAD-DMC-HC, 2026 WL 2267924, *3 (E.D. Cal. Aug. 6, 2026); *Rafael P. v. Warden of the Golden State Annex Detention Facility*, No. 1:25-cv-1738-DAD-JDP, 2026 WL 534408, *3 (E.D. Cal. Feb. 26, 2026); *Flores Jimenez v. Andrews*, No. 1:25-cv-01104-KES-HBK, 2026 WL 1040948, *3–4 (E.D. Cal. Apr. 16, 2026). Accordingly, the court will apply the *Mathews* test.

*i. Petitioner's Private Interest*

The Ninth Circuit has held that it is "beyond dispute" that a noncitizen's private interest is "fundamental: freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). And "an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'" *Rodriguez Diaz*, 53 F.4th at 1207 (citing *Singh*, 638 F.3d 1196, 1204–05). In evaluating the first factor, courts also consider whether the length of detention is attributable to the petitioner's actions. *See id.* at 1207–08 (deciding that Rodriguez Diaz's private interest was diminished by "the fact that his detention was prolonged due to his decision to challenge his removal order.").

Here, petitioner has now been detained for more than 25 months without a bond hearing. *See* Doc. 8 at ¶ 20. Although petitioner was scheduled for two hearings, he was informed at both of those hearings that the immigration judge lacked jurisdiction over his bond redetermination. *See* Docs. 19-1 at 5:19–23; 19-2 at 6:11–17. And although petitioner has requested four continuances, two were to acquire counsel and two were to allow petitioner to file more supporting documents—there is no evidence that petitioner acted in bad faith. *See* Doc. 12 at 5–6. Unlike in *Rodriguez Diaz*, where the court found a slightly diminished private interest in a second bond hearing after petitioner had prolonged his detention by challenging his removal

order, petitioner has yet to receive any bond hearing after more than two years. *See* 53 F.4th at 1193, 1208; Docs. 19-1 at 5:19–23; 19-2 at 6:11–17. Given the length of petitioner's indefinite detention, the first factor weighs in petitioner's favor.

*ii. Risk of Erroneous Deprivation*

The purpose of immigration detention is to protect the community from dangerous noncitizens and prevent noncitizens from fleeing. *See Zadvydas*, 533 U.S. at 690. "In evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention." *Eliazar G.C. v. Wofford*, No. 1:24-cv-01032-EPG-HC, 2025 WL 711190, *6 (E.D. Cal. Mar. 5, 2025) (citation and internal quotations omitted) (citing *Rodriguez Diaz*, 53 F.4th at 1209–10). Under § 1226(c), petitioner does not have the statutory right to a bond hearing to determine whether he is a flight risk or a danger. *Avilez*, 69 F.4th at 530. As additional procedures are not mandated under § 1226(c), petitioner has received no procedural opportunity to address the danger and flight risk issues while he has been detained for over two years pending his removal proceedings. But given the evidence of petitioner's extensive criminal history and his repeated illegal re-entries, which would undoubtedly factor into any bond determination by the immigration judge, on balance this factor weighs against petitioner.

*iii. Government's Interest*

Regarding the third factor, "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law'" and "has an obvious interest in 'protecting the public from dangerous criminal aliens.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore*, 538 U.S. at 518). But the "government interest at stake here is not the continued detention of [p]etitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field Off.*, No. 3:19-cv-01358-S, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020). And "[c]ourts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record . . . demonstrating that providing [p]etitioner with a bond hearing would be fiscally or administratively burdensome." *Eliazar*

*G.C.*, 2025 WL 711190, *8. The third factor weighs in petitioner's favor.

In summary, on balance the *Mathews* factors weigh in favor of petitioner. Accordingly, petitioner is entitled to a bond hearing.

## IV. CONCLUSION AND ORDER

The Court ORDERS:

1. The petition for writ of habeas corpus is GRANTED.
2. Respondents are ORDERED to prove petitioner Robert Martin Daley with a bond hearing before an immigration judge to be held within fourteen (14) days that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), at which:
   a. "the government must prove by clear and convincing evidence that petitioner is a flight risk or a danger to the community to justify denial of bond," *Singh*, 638 F.3d at 1203, and
   b. the immigration judge should consider petitioner's financial circumstances or alternative conditions of release in the event petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond.
3. The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

Dated: August 17, 2026

UNITED STATES DISTRICT JUDGE